IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>KARINA BELENO-CARNEY,<br><br>    Debtor.<br>KARINA BELENO-CARNEY,<br><br>    Plaintiff,<br><br>v.<br><br>NELNET,<br>INTERNAL REVENUE SERVICE, and<br>MASSACHUSETTS DEPARTMENT<br>OF REVENUE,<br><br>    Defendants. | Case No. 20-04039<br>Chapter 7<br>Chief Judge Christopher J. Panos<br><br><br><br><br><br>Adv. Proc. No. 20-04039 |

**DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

The United States of America, named and sued as, "Internal Revenue Service," (the "United States"), by its attorneys, Thelma A. Lizama, Tax Division, United States Department of Justice, and Raquelle L. Kaye, Assistant United States Attorney for District of Massachusetts, moves the Court to dismiss plaintiff Karina Beleno-Carney's adversary complaint in its entirety (including against NelNet), on the ground that plaintiff's complaint (1) fails to present a justiciable case or controversy, as required by Article III of the United States Constitution, and is not otherwise ripe for adjudication; (2) does not fall within the Court's subject matter jurisdiction under 28 U.S.C. §§ 157 and 1334; and/or (3) is barred by sovereign immunity because it does not fall within the scope of 11 U.S.C. § 505(a) or any other provision listed in 11 U.S.C. § 106, and by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and the Anti-Injunction Act, 26 U.S.C. § 7421(a). In support of this motion the United States submits the following in lieu of a separate

1

memorandum of law.[1]

## BACKGROUND

On July 2, 2020, Plaintiff filed a voluntary Chapter 7 bankruptcy petition with this Court. On October 6, 2020, Plaintiff commenced this adversary proceeding seeking a declaratory judgment with respect to various federal educational loans made to her by Defendants Nelnet and College Assist. *See* Adv. Proc. Doc. Nos. 1, 12. Specifically, Plaintiff seeks a declaration that upon completion of the required payments under the William D. Ford Program, a federal student loan program, any remaining debt will be discharged and will not be treated as debt forgiveness for purposes of computing a future income tax liability. *Id.*

The William D. Ford Federal Program was enacted by Congress and it provides borrowers numerous loan repayment plan options to repay their loans. *See* 20 U.S.C § 1087a; 34 C.F.R. § 685.208. The particular repayment plans available to any individual borrower may depend on the type(s) of loans borrowed, the date of becoming a new borrower, or the date of entering repayment status. *See* 34 C.F.R. § 685.208. Among the repayment options are various income-driven repayment ("IDR") plans, including an income contingent repayment plan ("ICR"); and income-based repayment plan ("IBR");a pay as you earn plan ("PAYE"); and a revised pay as you earn plan ("REPAYE"). 34 C.F.R. §§ 685.208, 685.209, 685.221. Under all of the IDR plans, a borrower's repayment amount is adjusted annually based on the borrower's adjusted gross income ("AGI") and the borrower's family size from the previous year (borrower's may also submit an updated IDR application at any time to reflect current income or adjust their family size and the borrower's repayment amount will be appropriately adjusted at

---

[1] Local Rule 9013-1(c) provides that a "movant may file together with the motion a separate supporting memorandum, including argument and citations to authorities. Since this appears to be optional, we have included the argument and authorities in this motion.

that time). *Id*. Moreover, all the IDR plans make available the prospect of eventual loan forgiveness, if a borrower, after making payments according to one or more of the IDR plans, has been unable to fully repay their student loan debt by the end of the maximum repayment term. 34 C.F.R. § 685.221. The maximum repayment period for the ICR and the IBR is twenty-five years; the maximum repayment period for the PAYE plan is twenty years; and the maximum repayment period for the REPAYE plan is twenty years, unless the borrower has an eligible loans that were received for graduate or professional study, in which case the maximum repayment is twenty-five years. *Id*.

It is unclear from the Plaintiff's complaint what type of repayment plan she is currently enrolled in. *See* Adv. Proc. Doc. Nos. 1. However, the complaint does state that she has been a participant in the William D. Ford Program since August 2013 and that upon completion of the required payments, Plaintiff will receive a discharge of any remaining debt. *See* Adv. Proc. Doc. Nos. 1, ¶¶ 11, 13. Regardless of what repayment plan Plaintiff is currently enrolled in, Plaintiff has been repaying her student loans for approximately seven years. Assuming that Plaintiff has been compliant with all of the requirements during these seven years and that she will remain compliant and satisfy all of the conditions necessary under her repayment plan, she would not be eligible for loan forgiveness under any of the IDR plans for at least another thirteen to eighteen years.

## ARGUMENT

1. **The Plaintiff's Complaint Must Be Dismissed Because It Does Not Present An Actual Case Or Controversy Under Article III Of The U.S. Constitution, And The Motion Is Not Ripe For Adjudication Act.**

Article III, Section 2, Clause 1, of the United States Constitution provides, in part, the following:

> The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and Treaties made, or which shall be made, under their authority; ... --to controversies to which the United States shall be a party; ....

This provision limits the jurisdiction of Article III courts to actual "cases or controversies," and prevents them from rendering "abstract, hypothetical or contingent questions." *Alabama State Federationo of Labor, et al. v. McAdory*, 325 U.S. 450, 461 (1945). *See Aetna Life Ins. Co.*, 300 U.S. 227, 240-42; *In Re Fedpak Systems, Inc.*, 80 F.3d 207, 211-12 (7th Cir. 1996). Bankruptcy courts, which act as an arm of Article III district courts, are subject to the limitations of Article III courts. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., et al.*, 458 U.S. 50, 73-89 (1982).

To be "justiciable" under Article III, a controversy must be one that calls for "an adjudication of present right upon established facts." *Aetna Life Ins. Co.*, 300 U.S. at 242. *See Coffman v. Breeze Corporations, Inc., et al.*, 323 U.S. 316, 324 (1945)(declaratory judgment "may not be made the medium for securing an advisory opinion in a controversy which has not arisen"). "A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot." *Aetna Life Ins.*, 300 U.S. at 240.

A limitation imposed by the justifiability doctrine is that of ripeness. The question of ripeness reflects constitutional considerations that implicate Article III limitations on judicial power, as well as prudential reasons for refusing to exercise jurisdiction. *See Stolt-Nielsen S.A. v. AnimalFeeds Int's Corp.*, 559 U.S. 662, 670 n.2 (2010) (citing *Reno v. Catholic Social Services, Inc. et al*, 509 U.S. 43, 57 n.18 (1993). Ripeness involves the fitness of an issue for judicial review and the hardship to the parties for withholding court consideration. *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Comm., et al.*, 461 U.S.

4

190, 201 (1983) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-149 (1967)). Under the ripeness doctrine, a court lacks jurisdiction with respect to claims that are "contingent [upon] future events that may not occur as anticipated, or indeed may not occur at all. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks and citations omitted).

Here, there is no actual "case or controversy" in this proceeding within the meaning of Article III of the Constitution. The complaint partly seeks a declaration that the student loan debt will be discharged upon the completion of her payments under the Ford Program:

> The Plaintiff seeks a declaration of this Court that once her payments are completed under the Ford Program, that the remainder of the debt due to the Defendant, its successors and/or assigns, is discharged and that there will be no forgiveness of debt income generated.

Complaint, ¶ 14. That is clearly dependent upon a future event.

Plaintiff's Complaint relies on *Ayele v. Educational Credit Management Corp. (In re Ayele)*, 468 B.R. 24 (Bankr. D. Mass 2012), without referencing the appeal, and *Brunell v. Citibank*, 356 B.R. 567 (Bankr. D. Mass. 2006). In *Ayele*, the court found that the debtor had not established that repaying his student loan constituted an undue hardship. 468 B.R. at 34. Notably, the Internal Revenue Service was not named as a defendant in the adversary proceeding. Nevertheless, the *Ayele* court, citing *Brunell* and *Stevenson v. Educational Credit Corp. (In re Stevenson)*, 463 B.R. 586 (Bankr. D. Mass 2011), allowed the debtor the opportunity to enter into a non-bankruptcy repayment plan of the student loans at issue, and said that if debtor entered the program it would enter a judgment partially discharging the student loan debt to the extent any remained at the expiration of the repayment plan. 468 B.R. at 36. The court therefore entered a conditional prospective discharge order that was conditioned on the debtor's participation in and ultimate completion of a non-bankruptcy federal student loan repayment program. The court in *Ayele* reasoned that section 105(a) of the Bankruptcy Code gives

5

bankruptcy courts the authority to fashion equitable relief in appropriate circumstances in student loan discharge cases, but the court ignored the fact that section 105, as explained below, only works in conjunction with another provision of the Bankruptcy Code which needs to be implemented. 468 B.R. at 36. *See Hemar Ins. Corp. v. Cox (In re Cox)*, 338 F.3d 1238 (11th Cir.2003) ("Because the specific language of § 523(a)(8) does not allow for relief to a debtor who has failed to show 'undue hardship,' the statute cannot be overruled by the general principles of equity contained in § 105(a)."). The conditional prospective discharge ordered by the court in *Ayele* was thus improper.

Moreover, the ripeness problem was never discussed and the consequence of failing to address the speculativeness of the premise on which partial relief under § 105(a) was granted became clear in the aftermath. The debtor declined to enter the program as observed by the district court on appeal. *Ayele v. Educational Credit Mgt. Corp.*, 490 B.R. 460, 461 (D.Mass. 2013). The district court affirmed the denial of discharge relief.

In *Brunell*, this Court's only holding was to deny the dischargeability determination sought under § 523(a)(8). There is no discussion of using § 105(a) to achieve a result not authorized under § 523(a)(8). While ripeness is not explicitly discussed, it is implicitly recognized where the decision states: "should ECMC not approve her application for the Ford program or provide the Debtor an alternate affordable payment plan, or subject her wages or tax refunds to garnishment during the repayment period such that the Debtor is unable to subsist and care for her children, I would consider another request for discharge of the student loans and review of the Debtor's situation pursuant to the Debtor's properly renewed request at that time." *Brunell*, 356 B.R. at 581.

6

*Stevenson* is similar to *Ayele* in that the Court, after ruling that the debtor did not qualify for a complete discharge under § 523(a)(8), ordered that "[i]f Ms. Stevenson were to participate in the Income Based Repayment Plan Option and so inform the Court, and if Ms. Stevenson faithfully abides by the terms and provisions of either the IBRP option or an ICRP, any student loan debt which she may have at the expiration of the plan is discharged" *Stevenson*, 463 B.R. at 599. However, unlike in *Ayele,* the court appeared to use § 105 only for the premise that it could use § 523(a)(8) to grant *partial* relief contingent on future events (as opposed to making § 105(a) itself the source of the discharge). Once again (as in *Ayele*) there is no discussion of ripeness. Once again, the debtor appealed. The District Court affirmed the denial of relief without discussing the conditional partial relief and it thus appears that once again the debtor did not enter the program. *In re Stevenson*, 475 B.R. 286 (D. Mass. 2012). The Internal Revenue Service was similarly not named as a defendant in *Stevenson*.

The fact that neither *Stevenson* nor *Ayele* discusses ripeness deprives them of any persuasive force. Instead, Judge Hillman had it right in *Brunell* in suggesting the debtor could return to the court with a new dischargeability complaint in the future if circumstances so warranted.

Plaintiff's complaint also seeks a determination that the discharge of plaintiff's student debt will not produce cancelation of indebtedness income. This is a reference to Section 108 of the Internal Revenue Code, which treats cancellation of indebtedness as income, although there is an exception if the discharge is under title 11. Preliminarily, the discharge plaintiff anticipates is not a discharge under title 11 but rather, if it occurs, under the William D. Ford Program. A proceeding seeking a determination of the tax consequences of a hypothetical cancellation of debt under a federal student loan repayment program, does not present an "actual controversy."

7

Moreover, this proceeding concerns a future income tax period and events that may not occur as anticipated or may not occur at all. "Tax liability is . . . not certain to flow from discharge of liability under an [William D. Ford Program income-based repayment plan]." *In re Arroyo*, 470 B.R. 18, 30-31 (Bankr. D. Mass. 2012) (internal quotation marks and citation omitted). Instead, "a participant in an [income based repayment plan] will realize taxable income only to the extent that, immediately before the discharge, her assets exceed her liabilities." *Id*. at 31. In *Stevenson*, this Court declined to address a future federal tax liability. As such, the Court should dismiss the plaintiff's claim at this time because a prospective non-bankruptcy discharge of student loan debt solely aimed at avoiding taxes would be improper and premature.

   **2. The Plaintiff's Complaint Must Be Dismissed For Lack Of Subject Matter Jurisdiction Under 28 U.S.C. §§ 157 and 1334.**

Putting the limits of Article III aside, there is also not statutory jurisdiction. Section 1334(b) of Title 28 provides that the district courts shall have original but not exclusive jurisdiction over all civil proceedings "arising under" Title 11, or "arising in" or "related to" cases under Title 11. Furthermore, 28 U.S.C. § 157(a) states that "[e]ach district court may provide that ... any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." However, in regard to proceeding "related to" cases under Title 11 (non-core matters), a bankruptcy court can only make proposed findings of fact and conclusions of law. *See* 28 U.S.C. § 157(c)(1).

The phrase "arising under title 11" means "those proceedings that involve a cause of action created or determined by a statutory provision of title 11," and the phrase "arising in" a case under Title 11 means those "proceedings ... that, by their very nature, could arise only in bankruptcy cases." *In Re Wolverine Radio Co.*, 930 F.2d 1132, 1145 (6th Cir. 1991), *cert. dismissed*, 503 U.S. 978 (1992).

The instant case does not involve a proceeding "arising under title 11" nor is it a proceeding "arising in" a case under Title 11. Indeed, the discharge the plaintiff seeks is under the William D. Ford Federal Program, not any provision of title 11. The possible tax consequences on a programmatically discharged debt does not by its nature arise only in bankruptcy cases. Given that the declaration the plaintiff seeks has no bankruptcy purpose, there is no subject matter jurisdiction for such a tax determination.

In this regard, section 505, discussed extensively in part 3 below, is not a provision that confers subject matter jurisdiction, but rather is procedural and part of a waiver of sovereign immunity that permits bankruptcy courts to determine the amount or legality of tax only when there is a bankruptcy purpose under 28 U.S.C. § 1334(b). *See Bush v. United States*, 939 F.3d 839, 842-843 (7th Cir. 2019) (§ 505 does not address subject matter jurisdiction and the bankruptcy court lacked jurisdiction to determine tax penalties subordinated under § 726(a)(4) where estate assets were insufficient to satisfy priority and general claims);[2] *In re Johnston*, 484 B.R. 698, 712 (Bankr. S.D. Ohio 2012) (holding that Section 505 is not an independent grant of jurisdiction, that a tax dispute does not arise under title 11 and, if there are no assets, the dispute

---

[2] *Bush* cites two circuit cases it suggests have held to the contrary but those cases, despite their loose language, are actually not on point and the Seventh Circuit is the only court of appeals to have addressed whether § 505 permits adjudicating a tax where the adjudication cannot possibly affect administration of the bankruptcy estate. The cases, *In re Luongo*, 259 F.3d 323 (5th Cir. 2001), and *In re Custom Distribution Services*, 224 F.3d 235, 239-40 (3d Cir. 2000), use the word jurisdiction to refer to whether sovereign immunity bars jurisdiction. Moreover, in both cases, subject matter jurisdiction existed because the dispute was exclusively about the merits of claims arising directly under title 11 – *viz*, whether exempting tax refunds under § 522 could prevent setoff or instead whether setoff was protected under § 553. In neither case did the court endeavor to determine the "amount or legality" of the tax. The point of *Bush* and other cases cited in the text above is that federal tax disputes do not "arise under title 11"; they arise under title 26. Section 505 simply allows them to be adjudicated in bankruptcy cases when there is a bankruptcy purpose, such as resolving a claim against the bankruptcy estate or the estate's right to a tax refund.

does not arise in the case or relate to the case); *In re Swain*, 437 B.R. 549, 562 (Bankr. E.D. Mich. 2010) (same); *United States v. Zelles*, 255 B.R. 198, 201 (N.D. Ohio 2000) (same).

Moreover, those cases involve tax already asserted by the IRS for tax years already ended. We are not aware of any case holding that § 505 confers jurisdiction to determine federal tax consequences of a future event. *See In Re Hartman Material Handling Systems, Inc.*, 141 B.R. 802, 813 (1992) (reasoning that neither section 505 or any other provision of the Bankruptcy Code provides authority for a determination in advance of post-confirmation tax consequences). *See also In re UAL Corp.* 336 B.R. 370 (Bankr. N.D. Ill. 2006), discussed in part 3 below.

In this proceeding, the plaintiff is ultimately seeking an advance declaration regarding a non-bankruptcy discharge pursuant to a federal student loan repayment program and a determination aimed at avoiding federal taxes, which falls outside the confines of 28 U.S.C § 1334(b). *See* Adv. Proc. Doc. Nos. 1, 12 ("[T]he Plaintiff respectfully requests that this Court enter a finding that, upon completion of the repayments by the Plaintiff under the Ford Program, the remainder of the student loan debt is discharged so there will be no forgiveness[-]of[-]debt income tax…"). The plaintiff's complaint asserts that the Court's jurisdiction is "based upon 28 U.S.C. § 157 (b)(2)(I), 11 USC. 105(a), 11 USC 523(a)(8) and Rules 7001(6) and (9) of the Federal Rules of Bankruptcy Procedure." *See* Adv. Proc. Doc. No. 1, ¶ 7. Rules 7001(6) and (9) cannot confer subject matter jurisdiction. As mentioned above and discussed further below, section 105 only works in conjunction with another provision of the Bankruptcy Code which needs to be implemented. Section 105 is remedial, not jurisdictional.

Section 523(a)(8) is functional, not jurisdictional. It provides that a discharge does not apply to student loan debt, "unless excepting such debt from discharge…would impose an undue

hardship on the debtor and the debtor's dependents." But section 523(a) as a whole is addressing exceptions to a *bankruptcy* discharge and not to discharge of indebtedness under some non-bankruptcy law. To the extent plaintiff is in fact seeking declaratory relief that the student loan debt will be discharged under section 727 as a result of compliance with her obligations under the Ford Program, the language of section 523(a)(8) does not contemplate the fashioning of any equitable relief in place of making that requisite determination. *See Hemar Ins. Corp. v. Cox*, 338, F.3d 1238 (11th Cir. 2003) ("Because the specific language of § 523(a)(8) does not allow for relief to a debtor who has failed to show 'undue hardship,' the statute cannot be overruled by the general principles of equity contained in §105(a).") Here, although the plaintiff cites to section 523(8)(a), she does not allege that repayment of her student loan debt would present an undue hardship; the plaintiff simply asks for a prospective discharge without alleging, let alone establishing the existence of undue hardship.

In substance, the plaintiff is asking this Court to make a determination that has no bankruptcy purpose: that part of her student loan debt will be forgiven under a non-bankruptcy statute if she meets certain qualifications for that relief and that any future forgiveness of debt that the plaintiff may or may not be eligible for in thirteen to eighteen years under a federal student loan program will not be treated as taxable income. There is simply no subject matter jurisdiction under 28 U.S.C. § 1334.

3. **The Plaintiff's Complaint Must Be Dismissed Because The Sovereign Immunity Of The United States Has Not Been Waived, And The Complaint Is Barred By The Declaratory Judgment Act And/Or The Tax Anti-Injunction Act.**

The United States, as sovereign, may not be sued without its consent, and the terms of its consent define the court's jurisdiction. *United States v. Testan*, 424 U.S. 392, 399 (1976). Any waiver of the federal Government's immunity to suit must be explicit and must be strictly

11

construed. *Soriano v. United States*, 352 U.S. 270, 276 (1957).

The Declaratory Judgement Act, 28 U.S.C. § 2201, provides, in part, as follows:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than ... a proceeding under section 505 or 1146 of title 11, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]

28 U.S.C. § 2201(a) (emphasis added). Any proceeding seeking a declaratory judgment with respect to federal taxes brought in bankruptcy court is barred by the Declaratory Judgment Act unless it falls within the scope of 11 U.S.C. § 505 or 1146. *See* H. Rep. No. 95-595, 95th Cong., 1st Sess. at 450 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. at 158 (1978).

The operation of the Declaratory Judgment statute is procedural only; it provides a remedy and procedures for cases and controversies. *Skelly Oil Co., et al. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Aetna Life Ins. Co. Of Hartford, Conn. v. Haworth, et al.*, 300 U.S. 227, 239-40 (1937), *reh'g denied*, 300 U.S. 687 (1937). The Declaratory Judgment Act itself does not constitute a waiver of sovereign immunity. *Progressive Consumer Federal Credit Union v. United States*, 79 F.3d 1228, 1230 (1st Cir. 1996). In addition, the Act begins with the limitation that it applies only "[i]n a case of actual controversy" under Article III of the Constitution and with the district court's jurisdiction.

Section 106 of the Bankruptcy Code addresses the waiver of the sovereign immunity in bankruptcy cases by "governmental units," including, federal, state and local governments.[3]

---

[3] Section 1334 of Title 28 (U.S.C.) does not constitute a waiver of the United States' sovereign immunity. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 38 (1992). The Supreme Court has ruled: "The fact that Congress grants jurisdiction to hear a claim does not suffice to show Congress has abrogated all defenses to that claim. The issues are wholly distinct." *Nordic Village, Inc.*, 503 U.S. at 38 (citing *Blatchford v. Natice Village of Noatak & Circle village*, 501 U.S. 775, 786 n.4 (1991)).

*See* 11 U.S.C. § 101(26). That section abrogates the United States' sovereign immunity to the extent set forth in certain other sections of the Bankruptcy Code, including Sections 505. 11 U.S.C. § 106(a). Section 106 also waives sovereign immunity to the extent provided in § 105. Section 105 empowers a court to issue any order, process, or judgment that is necessary or appropriate to carry out other provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). Section 105, however, only works in conjunction with another provision of the Bankruptcy Code which needs to be implemented. *See* 11 U.S.C. § 105(a); *Norwest Bank Worthington*, 485 U.S. at 206 ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."), *In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004) ("[T]he power conferred by § 105(a) is one to implement rather than override."). Ultimately, section 106 does not create any substantive claim for relief not otherwise existing under the Bankruptcy Code. 11 U.S.C. § 106(a)(5).

Section 505(a) provides:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine–

(A) the amount or legality of a tax, fine penalty, or addition to tax if such amount or legality was contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under [Title 11]; or

(B) any right of the estate to a tax refund, before the earlier of--

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

11 U.S.C. § 505(a). Preliminarily, as noted in part 2 above, section 505 is not jurisdictional; it just enables bankruptcy courts to determine tax when there is a bankruptcy purpose under 28 U.S.C. § 1334(b).

In essence, section 505 permits the bankruptcy courts to determine a debtor's tax liability (or the liability of its estate) unless the debtor previously contested and adjudicated the liability or, with respect to tax refund suits, the estate failed to properly file a claim for refund with the Internal Revenue Service ("IRS"). While the language of the statute appears broad on its face, section 505(a) is limited to determinations of the debtor's existing tax liability (or the liability of its estate). *In Re Cadillac Recreation, Inc.*, 159 B.R. 244, 247 (C.D. Ill. 1993); *see* H. Rep. No. 95-595, 95th Cong., 1st Sess. at 356; S. Rep. No. 95-989, 95th Cong., 2d Sess. at 67. First, there is no tax to determine for tax years that have not even begun. Second, after the tax is determined by a bankruptcy court, the tax may be assessed against "the estate, the debtor, or a successor to the debtor." 11 U.S.C. § 505(c). That would be impossible if the tax year has not ended, let alone begun.

Section 505 does not contemplate adjudications over future tax liabilities for events that have not yet taken place. In fact, the reference in the Declaratory Judgment Act to section 505 of title 11 has nothing to do with Section 505(a) and instead relates to the expedited determination of tax provided for by what is now Section 505(b)(1) in connection with tax returns filed by bankruptcy trustees for post-petition (administrative expense) tax claims under Section 503. *See* H. Rep. No. 95-595, 95th Cong., 1st Sess. at 356; S. Rep. No. 95-989, 95th Cong., 2d Sess. at 67-68. The legislative history to the 1978 amendment to the Declaratory Judgment Act (28 U.S.C. § 2201), which added 11 U.S.C. § 505 as among the exceptions to the tax exclusion clause of that Act, confirms this. Congress inserted the exception into the Declaratory Judgment Act at the

time it enacted the Bankruptcy Code. The House and Senate reports both explain:

> This section amends 28 U.S.C. 2201, relating to declaratory judgments to except from the prohibition on declaratory judgment on tax matters, the two instances provided for under the bankruptcy code, relating to relieving a trustee from personal liability for taxes owing by the estates (11 U.S.C. 505(c)) and the tax effects of a reorganization (11 U.S.C. 1146(d)).

H. Rep. No. 95-595, 95th Cong., 1st Sess. at 450. *See* S. Rep. No. 95-989, 95th Cong., 2d Sess. at 158. Section 505(c) of the referenced bills ultimately became Section 505(b) of the 1978 Bankruptcy Code, as a result of changes made during the conference (and in 2005 became Section 505(b)(1)). Thus, Congress understood that Section 505(b) was the "declaratory" portion of the statute, since it pertained to the potential personal liability of a trustee or debtor or successor to a debtor under a reorganization plan in the event that a distribution or lack of one is made in reliance upon a determination of the IRS or the court under Section 505(b). The relief was declaratory because it could be invoked unilaterally without the IRS filing a claim or a trustee filing a refund claim. As later amended in 2005, the provision now affords the same declaratory relief not only to the trustee and debtor but also to the estate.[4]

Section 505(a)(1), however, is not declaratory at all – rather, it permits a bankruptcy court, for example, to determine the amount or legality of a tax that is asserted as part of a proof of claim (11 U.S.C. § 502) or a request for payment of administrative expenses (11 U.S.C. § 503). A proof of claim or request for payment seeks a distribution – a remedy that is in no sense "declaratory." Similarly, a refund suit as contemplated by § 505(a)(2)(B) is not declaratory either; it involves a trustee seeking to recover money from the taxing authority.

The legislative history of Section 505(a) reveals that the scope of that section extends

---

[4] The 2005 amendment overruled cases that had held that the IRS could assert additional tax as in *in rem* claim against the bankruptcy estate.

15

Case 20-04039 Doc 25 Filed 01/25/21 Entered 01/25/21 11:26:45 Desc Main
Document Page 16 of 19


only to tax consequences of events which have already occurred. The House and Senate reports state that subsections (a) and (b) of Section 505 were intended to "permit determination by the bankruptcy court of any *unpaid* tax liability of the debtor that has not been contested before or adjudicated by a judicial or administrative tribunal ...." H. Rep. No. 95-595, 95th Cong., 1st Sess. at 356 (emphasis added); S. Rep. No. 95-989, 95th Cong., 2d Sess. at 67 (emphasis added); see S. Rep. No. 95-1106, 95th Cong., 2d Sess. at 9. The court's authority under Section 505 as finally enacted was described by the floor managers of the House-Senate compromise as follows:

> The House amendment authorizes the bankruptcy court to rule on the merits of any tax claim involving an *unpaid tax*, fine, or penalty relating to a tax, or any addition to a tax, of the debtor or the estate.

124 Cong. Rec. H. 32413-14 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards), S. 34012-14 (daily ed. Oct. 5, 1978) (remarks of Sen. DeConcini) (emphasis added). No mention is made of the court's authority to determine the IRS's ability to impose income tax liabilities and/or the tax effects resulting from a future non-bankruptcy cancellation of debt under a federal student loan program. The use of the phrase "unpaid tax liability" indicates that Congress was concerned only with taxes relating to events which occurred prior to the time of the hearing under section 505. If a liability is "unpaid," it must presently exist, i.e., it must have some time in the past become "payable." Similarly the reference to a refund in section 505(a)(2)(B) can only be to tax not only already accrued but also already paid. Thus, the court's jurisdiction under Section 505 extends only to determining the amount or legality of a tax based on events which occurred previously. The phrase "amount or legality" in § 505(a) also excludes future tax periods because the amount cannot possibly be determined and the legality may change based on future legislation. This conclusion is further supported by the statute's reference to penalties and other additions to a tax. Such penalties and additions may accrue only on existing liabilities, not on

liabilities which may or may not arise in the future.

This reading of the purpose for section 505 to the tax exclusion portion of the Declaratory Judgments Act is fully endorsed in a decision by former Chief Judge Eugene Wedoff of the Bankruptcy Court for the Northern District of Illinois who also chaired the Advisory Committee on Bankruptcy Rules for many years. *In re UAL Corp.*, 336 B.R. 370 (Bankr. N.D. Ill. 2006). In rejecting jurisdiction to declare the tax affects of transactions to be carried out pursuant to a Chapter 11 plan, Judge Wedoff observed that the legislative history to the Declaratory Judgment Act reveals that the exception for section 505 in the tax exclusion clause in 28 U.S.C. § 2201 refers to what was originally proposed as § 505(c) and ultimately was enacted as § 505(b) - *i.e.*, the trustee's or debtor's right to declaratory relief in respect to a tax return filed on behalf of the estate so that the trustee or debtor could safely distribute the estate without fear of incurring personal liability to the IRS.

Because Plaintiff's request does not fall within section 505, there is no waiver of sovereign immunity under section 106 or any other statute and a declaratory judgment is barred by 28 U.S.C § 2201.

Further, Plaintiff's action is also foreclosed by the Anti-Injunction Act. The Anti-Injunction Act, 26 U.S.C. § 7421(a), provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." The purpose of the Anti-Injunction Act is to protect "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund[,]'" and to protect "the collector from litigation pending a suit for refund." *Bob Jones University v. Simon*, 416 U.S. 725, 736-37 (1974). The goal of the statute is to avoid suspending the collection of

taxes. *Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1, 8 (1962)

Here, the purpose of the plaintiff's action is to enjoin the IRS, at some unspecified time in the future, from assessing or collecting federal tax liabilities based on asserting cancellation of indebtedness income. This type of action is at the heart of what the Anti-Injunction Act seeks to protect against. As such, it should be barred.[5]

## CONCLUSION

For the foregoing reasons, defendant United States of America moves this Court to dismiss Plaintiff's complaint

---

[5] The Anti-Injunction Act, 26 U.S.C. § 7421(a), is not overridden by the Bankruptcy Code except insofar as its provisions contain statutory injunctions, such as § 362 or § 524, that may be enforced under § 105. But there is no conflict because those injunctions are statutory whereas 26 U.S.C. § 7421 only bars purely judicial injunctions.

Date: January 25, 2021

        DAVID A. HUBBERT
        Deputy Assistant Attorney General
        Tax Division, U.S. Department of Justice

*By:*   */s/ Thelma A. Lizama*
       THELMA A. LIZAMA
       Trial Attorney, Tax Division
       U.S. Department of Justice
       P.O. Box 55
       Washington, D.C. 20044
       202-616-3339 (v)
       202-514-5238(f)
       Thelma.A.Lizama@usdoj.gov

       UNITED STATES OF AMERICA
       By its attorneys

       ANDREW E. LELLING
       United States Attorney

By:   */s/ Raquelle L. Kaye*
       RAQUELLE L. KAYE
       Assistant United States Attorney
       1 Courthouse Way, Suite 9200
       Boston, MA 02210
       (617) 748-3403
       raquelle.kaye@usdoj.gov

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and copies will be sent to those indicated as non-registered participants on January 25, 2021.

                                                       */s/ Thelma A. Lizama*